UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SHARON SPRINGER,

                Plaintiff,                    **MEMORANDUM AND ORDER**
     -against-                                  19-CV-2032 (RRM)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      In a stipulation dated August 7, 2019, the parties to this Social Security appeal agreed to reverse defendant Commissioner's final decision denying plaintiff Sharon Springer's claim for Social Security Disability Insurance benefits and to remand this matter for further administrative proceedings. After obtaining a fully favorable decision from an ALJ on remand and less than 14 days after plaintiff received a Notice of Award of past-due benefits, plaintiff and Osborn Law, P.C. ("Osborn Law") – the law firm that successfully represented plaintiff before this Court pursuant to contingency-fee agreement – moved for an order awarding attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons set forth below, the Court grants plaintiff's motion and awards Osborn Law $7,962.50 in attorney's fees.

## BACKGROUND

      In May 2015, plaintiff filed a claim for disability insurance benefits with the Social Security Administration ("SSA"), alleging that she had been disabled since March 9, 2015. After her claim was denied by a claims examiner, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ rendered an unfavorable decision on March 16, 2018, and the Appeals Council denied plaintiff's request for review on February 13, 2019.

Plaintiff then hired Daniel A. Osborn of Osborn Law to represent her before this Court on appeal of the Commissioner's final order. On April 2, 2019, plaintiff signed a contingent-fee agreement which provided, among other things, that plaintiff would pay Mr. Osborn either 25% of the past-due benefits recovered or the amount of fees awarded pursuant to the Equal Access to Justice Act ("EAJA"), whichever was greater. (Attorney Fee Agreement (Doc. No. 17-3) at 1.) Under the terms of the agreement, plaintiff assigned any fees and/or costs awarded pursuant to the EAJA to Mr. Osborn, and Mr. Osborn agreed to refund any EAJA fees he received to plaintiff if he was subsequently awarded a greater amount pursuant 42 U.S.C. §406(b). (*Id.*) The agreement specified that Mr. Osborn would only receive fees if he succeeded in convincing the federal court to remand the matter or to award plaintiff benefits. (*Id.*)

On April 9, 2019 – one week after entering into this agreement – Mr. Osborn commenced this action on plaintiff's behalf. On April 24, 2019, the Court entered an order directing defendant to serve the administrative record on plaintiff within 90 days of the commencement of this action and directing plaintiff to serve defendant with a motion for judgment on the pleadings within 60 days after being served with the administrative record. (4/24/2019 Order (Doc. No. 6).) In compliance with that order, defendant served the administrative record on plaintiff on or about July 8, 2019. (7/8/2019 Letter (Doc. No. 10).) But plaintiff never served the motion for judgment on the pleadings. Rather, in August 2019, defendant filed a stipulation and proposed order, agreeing to reverse the Commissioner's final decision pursuant to sentence four of 42 U.S.C. §405(g) and to remand this matter for further administrative proceedings. (Stipulation and Order of Remand (Doc. No. 11) at 1.)

In mid-June 2020, the Court "so ordered" the stipulation, entered judgment, and remanded the case. On October 4, 2019, Mr. Osborn wrote a letter to defendant's counsel,

2

seeking payment of $1,524.40 in attorneys' fees under the EAJA. (10/4/2019 Letter (Doc. No. 17-4).) Mr. Osborn attached to his letter copies of time records indicating that Osborn Law spent a total of 9.1 hours on this case. Defendant's counsel eventually agreed to award plaintiff $1,400 in EAJA fees. In late June 2020, the parties submitted a stipulation and proposed order reflecting that agreement, which the Court promptly "so ordered." (6/25/2020 Order (Doc. No. 16).)

After this matter was remanded, the Appeals Council issued an order further remanding the matter for a hearing before an ALJ. Osborn Law did not represent plaintiff on remand. Rather, Christopher D. Latham and Alan Karmazin – attorneys affiliated with Pasternack Tilker Ziegler Walsh Stanton & Romano, LLP – appeared on plaintiff's behalf at a December 21, 2020, videoconference before ALJ Jason A. Miller. (ALJ's Decision (Doc. No. 17-6) at 1.) In a decision dated March 19, 2021, ALJ Miller held that plaintiff had been disabled since March 9, 2015. (*Id.* at 6.)

On August 9, 2021, the SSA issued a Notice of Award ("NOA") informing plaintiff that she was entitled to past-due benefits for the period from September 2015 – five full calendar months after she became disabled – through May 2021. (NOA (Doc. No. 17-7) at 1–2.) The NOA did not precisely calculate the past-due benefits, but implied that 25% of this amount was $16,603.50. (*Id.* at 3.) The NOA also suggested that plaintiff would continue to receive benefits until at least mid-2024, stating that the disability determination would be reviewed at least once every three years. (*Id.*)

The Instant Motion

On August 20, 2021, plaintiff and Osborn Law moved for attorney's fees pursuant to 42 U.S.C. § 406(b). In its Memorandum of Law in Support of the Motion (the "Memo"), Osborn Law noted that, under the terms of the contingent-fee agreement, it had "the right to request up to

3

25% of any past-due benefits awarded" to plaintiff. (Memo (Doc. No. 17-1) at 1.) However, implicitly conceding that an award of $16,603.50 would constitute a windfall, Osborn Law requests fees of $7,962.50 – roughly 12% of the past-due benefits. (*Id.* at 4.) The Memo acknowledges that, if awarded this amount, Osborn Law will have to return the $1,400 it received in EAJA fees to plaintiff. Defendant has not opposed this motion.

## STANDARD OF REVIEW

The Social Security Act "allows courts to grant reasonable attorney's fees for successful representation in Social Security actions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022). Specifically, the Act provides, in relevant part:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment ….

42 U.S.C. § 406(b)(1)(A).

"Section 406(b) does not prohibit contingent fee agreements." *Wells v. Sullivan*, 907 F.2d 367, 369 (2d Cir. 1990). Indeed, the Supreme Court has acknowledged that "the marketplace for Social Security representation operates largely on a contingency fee basis," *Gisbrecht v. Barnhart*, 535 U.S. 789, 804 (2002), and attorneys and clients "characteristically" enter into contingency-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled," *id.* at 803. However, while § 406(b) allows contingency agreements, it "gives no guidance as to how a court should treat them in determining a 'reasonable fee.'" *Fields*, 24 F.4th at 852 (quoting *Wells*, 907 F.2d at 369).

The Second Circuit and the Supreme Court have filled that void by "set[ting] out guidelines for courts conducting this reasonableness analysis." *Id.* at 849. Under these

4

guidelines, courts "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808; *see Wells*, 907 F.2d at 371. The Second Circuit has "rejected reliance on 'the traditional lodestar method'" in determining whether an amount is reasonable. *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 371). "[B]ecause a successful social security claimant evaluates and pays his own attorney, … the best indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations." *Wells*, 907 F.2d at 371. But a court "ought not blindly approve every fee request made pursuant to a contingent agreement." *Id.* at 372.

Both the Second Circuit and Supreme Court have listed several factors that a court should consider in evaluating the reasonableness of a contingent-fee agreement. The Second Circuit has "instructed courts to 'determine whether the contingency percentage is within the 25% cap' and then to consider 'whether there has been fraud or overreaching in making the agreement, and' … 'whether the requested amount is so large as to be a windfall to the attorney.'" *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 372). In *Gisbrecht*, the Supreme Court provided examples of factors a court might consider in conducting this reasonableness analysis:

> First, the [Supreme] Court pointed to the character of the representation and the results the representative achieved, noting that courts may reduce the requested fees where the representation is substandard. Second, the Court indicated that a reduction is appropriate where the attorney is responsible for delay, lest the attorney profit from the accumulation of benefits during a delay that the attorney caused. And third, a reduction may be in order if the benefits are large in comparison to the amount of time counsel spent on the case—the so-called 'windfall' factor ….

*Fields*, 24 F.4th at 853 (internal quotations and citations omitted).

5

**DISCUSSION**

In this case, most of the factors do not require lengthy discussion. First, the contingency fee specified in the Attorney Fee Agreement between plaintiff and Mr. Osborn does not exceed 25% of the past-due benefits. Second, there is no evidence of fraud or overreaching in the making of the agreement. As the Supreme Court has noted, attorneys and clients "characteristically" enter into contingency-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled." *Gisbrecht*, 535 U.S. at 803. Although *Gisbrecht* was decided in 2002, there is nothing to suggest that this has changed over the past 20 years.

Third, Osborn Law's representation was not substandard and ultimately achieved the results plaintiff wanted. Plaintiff, who filed her Social Security claim in May 2015, had no success prior to retaining Mr. Osborn in early April 2019. Mr. Osborn promptly convinced defendant to remand this matter for further administrative proceedings. Plaintiff's claim was ultimately vindicated in late March 2021 when ALJ Miller ruled that plaintiff had been disabled since March 9, 2015 – just as she had originally claimed. As a result, plaintiff was awarded over $66,400 in past-due benefits and is presumably still receiving disability insurance benefits.

Fourth, there is no evidence of inordinate delay before this Court. Osborn Law commenced this action one week after plaintiff executed the Attorney Fee Agreement. It took the firm just over four months to convince defendant to stipulate to remand this matter. Although the stipulation was not "so ordered" and judgment in this case was not entered until June 2020, Osborn Law was not the cause of that delay.

The "Windfall" Factor

The so-called "windfall factor" requires a lengthier discussion. "In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate." *Fields*, 24 F.4th at 854. The Second Circuit has identified four "factors to be considered" in making this determination. First, courts should consider "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do." *Id.* Second, "courts should consider the nature and length of the professional relationship with the claimant – including any representation at the agency level." *Id.* at 855. Although § 406(b) fees compensate counsel only for court-related work, "consideration of 'the time spent and work performed by counsel on the case when it was pending at the agency level' can inform a district court's understanding of 'the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court.'" *Id.* (quoting *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005)).

"A third factor to consider is the satisfaction of the disabled claimant." *Id.* "Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 855. Since contingent-fee agreements make "payment for an attorney in a social security case … uncertain, … any reasonable fee award must take account of that risk." *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371).

After reviewing these factors, the Court is satisfied that the $7,962.50 requested by Osborn Law would not constitute a windfall. First, Osborn Law was particularly efficient.

7

According to the time records, the firm spent a total of only 9.1 hours on this case, despite not having handled the case at the agency level and being unfamiliar with the administrative record. Second, although Osborn Law's work on this case was largely completed about four months after the action was commenced, the firm succeeded in the litigation.

With respect to the third factor, the Memo does not expressly state that plaintiff was satisfied with Osborn Law's efforts and the motion papers do not include an affidavit from plaintiff to that effect. It is beyond dispute, however, that plaintiff ultimately received the disability insurance benefits she sought. This is a result that should satisfy most reasonable clients.

Finally, the Court notes that when plaintiff retained Mr. Osborn, success in this case was uncertain. By April 2019, plaintiff had been litigating her disability claim for almost four years at the agency level, without success. After the Court remanded this matter for further administrative proceedings, it took another law firm more than nine months to convince an ALJ that plaintiff was disabled. These facts suggest that the case was complex enough to require considerable effort and skill to obtain a fully favorable result. Accordingly, there was a substantial risk that the litigation might prove unsuccessful and that Osborn Law might receive no compensation at all for its work.

Although the $7,962.50 fee sought by movants amounts to $875 for each of the 9.1 hours that Osborn Law spent on this action, that fee is nonetheless reasonable in the context of this case. As noted above, there was a substantial risk that Osborn Law might be unsuccessful and receive no compensation for his efforts. The $875 hourly fee, which might be considered high if awarded in a non-contingency case, was reasonable compensation in light of that risk. *See Fields*, 24 F.4th at 854 ("even a relatively high hourly rate may be perfectly reasonable, and not a

8

windfall, in the context of any given case.") In addition, the Court notes that $7,962.50 requested by Mr. Osborn is actually less than half of the amount to which he was entitled under the express terms of the Attorney Fee Agreement with plaintiff.

Furthermore, it is well established that an attorney who receives fee awards under both the EAJA and § 406(b) for the same work must "refun[d] to the claimant the amount of the smaller fee." *Ward v. Kijakazi*, 20-CV-5412 (PGG)(JLC), 2023 WL 329210, at *2 (S.D.N.Y. Jan. 20, 2023) (quoting *Gisbrecht*, 535 U.S. at 796.) In its Memo, Osborn Law acknowledges that it must refund to plaintiff the $1,400 in EAJA fees that it was awarded previously. This refund effectively reduces the amount plaintiff will pay for Osborn Law's successful representation to $6,562.50 – less than 40% of the amount that she was willing to pay for the firm's representation.

## CONCLUSION

For the reasons set forth above, the Court grants the instant motion for $7,962.50 in attorney's fees pursuant to 42 U.S.C. § 406(b). The SSA shall pay that amount directly to Osborn Law, which shall promptly refund to plaintiff the $1,400 in EAJA fees awarded to the firm in June 2020.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2023

/s/ *Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge

9